UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TIMOTHY LYNCH, EDWARD WILLIAMS,
and, LAWRENCE KOGEL, as Trustees and
Fiduciaries of the TEAMSTERS LOCAL 1205
WELFARE FUND and the TEAMSTERS
LOCAL 1205 PENSION FUND,

                          Plaintiffs,                        **MEMORANDUM AND ORDER**
                                                              CV 05-01801 (DRH) (GRB)

       -against-

INTER-COUNTY BUILDING MATERIALS
CORP. and INTER-COUNTY BUILDING
MATERIALS HAMPTON CORP.,

                          Defendant.
------------------------------------------------------------X
**HURLEY, Senior District Judge:**

       Timothy Lynch, Edward Williams, and Lawrence Kogel, as trustees and fiduciaries of the Teamsters Local 1205 Welfare Fund and the Teamsters Local 1205 Pension Fund (collectively, "plaintiffs" or "Funds") commenced this action against defendants Inter-County Building Material Corp. ("Inter-County" or "Deer Park") and Inter-County Building Materials Hampton Corp. ("Hampton") (collectively, "defendants" or "the Companies") "seek[ing] judgment awarding them (1) $162,257.80 in delinquent contributions . . . (2) interest on the unpaid contributions at the rate of ten percent, (3) liquidated damages, (4) audit fees, (5) $15,241.55 in interest on previously late-made contributions from the period from 2001 to the present, and (6) attorney's fees and costs incurred in this action." (Pls.' Mem. in Supp. of Summ. J. ("Pls.' Mem. in Supp.") at 1-2.) Plaintiffs base their claims on defendants' alleged violation of 29 U.S.C. § 1145 ("ERISA") and the applicable collective bargaining agreements ("CBAs") between the Funds and the Companies.

Presently before the court are two motions. First, defendants move for summary judgment dismissing plaintiffs' claims pursuant to Federal Rule of Civil Procedure ("Rule") 56 on the grounds that "judgment should issue enforcing a settlement reached in the presence of the Court which Plaintiffs have not honored," "a substantial part of Plaintiffs' claims are barred by the statute of limitations," and "[f]urther bar exists to Plaintiffs' recovery because the audit report on which their claims are based disregards the jurisdictional scope of the subject collective bargaining agreements." (Defs.' Mem. in Supp. of Summ. J. ("Defs.' Mem. in Supp.") at 2.) Further, defendants claim that "[t]aking into account the errors and omissions of Plaintiffs' audit, Defendants are entitled to a credit of $128,224.65 ($1,367.54 for Inter-County-Hampton and $126,857.11 for Inter-County), as well as statutory damages such as attorneys['] fees and interest." (*Id*. at 19.) Second, plaintiffs cross-move for summary judgment pursuant to Rule 56 asserting that "there is no genuine issue of material fact as to whether defendants were obligated to make the unpaid contributions, or that defendants were habitually late in making their contributions, thereby incurring interest charges." (Pls.' Mem. in Supp. at 2.) For the reasons stated below, the defendants' motion is denied and plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

The following material facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

*The Audit Reports*

Defendants are distributors of building supplies at two locations, Hampton Bays and Deer Park. (Defs.' R. 56.1 Stmt. ¶ a.) "Defendants are signatories to CBAs with Teamsters Local 1205 [("the Union")] for each location." (*Id*. ¶ 2.) All CBAs agreed to by both parties contain a

"Scope" clause which states that "[a]ll production employees in the employ of the Employer, excepting supervisors are included under terms of this Agreement." (Pls.' Resp. to Defs.' R. 56.1 Stmt. ¶ 4.) Additionally, the CBAs list various positions under the heading "Hours of Work and Rates of Pay." *Id*. Specifically, Inter-County's CBA with the Union for January 1, 1995 through December 31, 1997 lists "Chauffeurs," Yardmen," and "Helpers," and Inter-County's CBAs from January 1, 1998 through December 31, 2005 list "Boom Truck Driver," "Mechanic," "Flatbed Driver," Yardmen," and "Helper." (*Id*.) Similarly, Hampton Bays's CBA for September 1, 1996 through December 31, 2002 lists "Chauffeurs," "Yardmen-Helpers," and "Warehousemen," and its January 1, 2003 through December 31, 2005 CBA lists "Boom Truck Driver," "Mechanic," "Flatbed Driver," "Yardmen," and "Helper." (*Id*.)

"The Trustees require [the Companies] to submit written forms, referred to as 'remittance reports,' that include the [employers'] statement of the number of hours worked by its employees performing [work covered by the CBAs ("covered work")] for the period at issue along with required contribution payments to the Funds." (Pls.' R. 56.1 Stmt. ¶ 6.) The Companies relied on "Lou Yonkey, the Companies' now former bookkeeper, to confirm the hours and contributions in the remittance reports." (Defs.' Supplemental R. 56.1 Stmt. ¶ 17.)

It is undisputed that on November 29, 2004, the Funds' auditor issued two reports, one regarding Inter-County and one regarding Hampton Bays, "which identified errors the Companies had made in reporting employees to the Funds" for the period January 1, 1997 through June 30, 2004. (Pls.' Resp. to Defs.' R. 56.1 Stmt. ¶¶ 13, 20.) The Inter-County report identified $104,894.06 in unpaid contributions owed to the Funds on behalf of employees performing covered work, and the Hampton Bays report identified $57,363.74 in unpaid contributions on behalf of covered employees. (Pls.' R. 56.1 Stmt. ¶ 16.)

3

In order to determine whether employees were performing covered work, plaintiffs' auditor asked Lou Yonkey about the employees' job classifications, and Yonkey did not indicate that any employees included in the audit were not performing covered work. (Pls.' R. 56.1 Stmt. ¶ 19.) Defendants now contend, however, that the audit included employees outside of the CBAs' jurisdiction. (Reply Mem. of Law in Further Supp. of Defs.' Motion for Summ. J. and in Opp'n to Pls.' Cross-Motion for Summ. Judg. ("Defs.' Mem. in Opp'n") at 15-18.)

*The Disputed Employees*

The defendants specifically dispute the contributions due for five employees, Robert Moytka of Hampton Bays, and Salvatore Caruso, Richard Ansman, Edward Steppan, and Juan Rojas of Inter-County ("the disputed employees"). (Pls.' R. 56.1 Stmt. ¶ 27; Leeds Decl., Ex. A, Audit Review and Summary of Findings.) According to plaintiffs, during the audit period, however, the Companies contributed on behalf of the disputed employees. (Pls.' R. 56.1 Stmt. ¶¶ 27-28.) Additionally, "[t]he Welfare Fund has paid 1,739 medical claims totaling $78,058.76 on these five employees' behalf from 1997 through the present." (*Id.* ¶ 32.) Furthermore, according to the plaintiffs, each of the five employees has been receiving or is entitled to receive pension benefits from the Pension Fund attributable to work performed during the audit period. (*Id.* ¶¶ 33-37.)

Defendants claim that any contribution on behalf of the disputed employees was in error. (Defs.' Resp. to Pls.' R. 56.1 Stmt. ¶ 27.) They claim that Yonkey did not appropriately "ascertain[] the proper hours to be reported based on whether employees were performing covered work," resulting in defendants having "paid contributions for non-covered employees . . . and paid contributions for hours during which employees were not performing covered work. (Defs.' Supplemental R. 56.1 Stmt. ¶¶ 20, 25-26.) As a result, Yonkey "was terminated for

4

failure to perform his duties." (*Id*. ¶ 20.) Further, defendants claim that due to Yonkey's errors they overpaid contributions in the amounts of $35,663.16 for Hampton Bays and $140,000.10 for Inter-County. (*Id*. ¶27.)

*The Settlement Conference*

On May 23, 2006, "the parties along with Counsel attended a settlement conference before Magistrate Judge Wall" at which Timothy Lynch and Edward Watras, defendants' principal, discussed a proposed settlement, dictating that "(1) Defendants would pay Plaintiffs a total of $140,000; and (2) Defendants would pay the settlement amount in monthly installments over a period of four years with interest."[1] (Defs.' R. 56.1 Stmt. ¶¶ 30-37.) For reasons that are disputed, the parties never formally finalized the settlement. (*Id.* ¶¶ 38-49; Pls.' Response to Defs.' 56.1 Stmt. ¶¶ 38-49.) Each month, however, during the period of September 2006 through February 2007, defendants tendered payments to plaintiffs pursuant to the settlement's terms. (Defs.' 56.1 Stmt. ¶¶ 51-52.) In February 2007, plaintiffs returned all said payments to defendants. (*Id.* ¶ 53.)

On October 31, 2006, defendants made a motion to compel enforcement of the settlement agreement, and plaintiffs opposed the motion on November 8, 2006. (*See* Docket Nos. 25, 28.) On December 12, 2006, Magistrate Judge Wall denied defendants' motion. (*See* Docket No. 33.)

*The Bankruptcy Proceeding*

In November 2008, one of the defendants in this action, Inter-County, filed for bankruptcy and the Court stayed this case for the duration of the bankruptcy proceeding. (*See* Order Staying Case, November 17, 2008.) Bankruptcy Judge Eisenberg ultimately approved

---

[1] Defendants posit the settlement was final whereas plaintiffs continually refer to it as the "proposed" settlement.

5

plaintiffs' claim and awarded plaintiffs' $160,335.38. (*See* Plaintiffs' Letter dated March 30, 2012, Docket No. 71 at 1; *see also* Order Approving Trustee's Final Report for Compensation and Reimbursement of Expenses ("Bankruptcy Order"), July 7, 2011, 8-08-75007, Docket No. 75 at 1.) Inter-County offered no opposition to plaintiffs' claim during the bankruptcy proceeding. (*See* Bankruptcy Order at 1.) The Court lifted the stay at the close of the bankruptcy proceeding. (*See* Order Lifting Stay, April 2, 2012.)

*Defendants' Failure to Obtain Counsel*

During the stay, which began after both sides had already fully briefed their Rule 56 motions, defendants' counsel withdrew and defendants were reminded that they must appear by counsel "when the stay is lifted." (*See* Order Granting Rule 69 Motion to Withdraw as Attorney, June 10, 2010.) When the Court lifted the stay, it gave defendants thirty days to retain counsel, to which defendants have yet to respond. (*See* Order Lifting Stay, April 2, 2012.) On June 29, 2012, the Court requested a status report from the parties, to which only plaintiffs responded. (*See* Status Report Order, June 29, 2012; Plaintiffs' Status Report, July 11, 2012, Docket No. 72.)

*The Prior Lawsuit*

It is undisputed that the Trustees conducted an audit of the Companies in 1998 covering the period 1993 through 1996 ("the 1998 audit"). (Defs.' Supplemental R. 56.1 Stmt. ¶¶ 31, 33.) It is also undisputed that "[i]n 2002, when the parties could not agree on a resolution of the 1998 audit, Plaintiffs sued the Companies seeking payment for alleged deficient contributions," ("the prior action). (*Id*. ¶ 35.) The parties ultimately settled this matter. (Defs.' R. 56.1 Stmt. ¶ 23.)

6

## *DISCUSSION*

### I. *Summary Judgment Standard*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.,* 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson,* 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518

(2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210–11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita,* 475 U.S. at 587).

On cross motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v.Bd. of Ed. Of Olean*, 667 F.2d 305 (2d Cir. 1981.)

II. *Defendants' Motion for Summary Judgment*

    A. *The Settlement Agreement*

Defendants in their summary judgment papers argue that "judgment should issue enforcing a settlement reached in the presence of the Court which Plaintiffs have not honored." (Defs.' Mem. in Supp. at 2.) Neither party in its original papers, however, addressed the

8

standard by which this Court should review Magistrate Judge Wall's previous order denying plaintiffs' motion to enforce the settlement. As a result, by Order dated February 11, 2008, this Court directed the parties to address "the appropriate standard of review to be applied by this Court in reviewing Judge Wall's Order." (Docket No. 58.)

After reviewing the parties' submissions, the Court agrees with plaintiffs that defendants' motion should be treated as a dispositive motion subject to *de novo* review by the District Court. *See Waite v. Schoenback*, 2011 WL 3425547, at *1, n. 1 (S.D.N.Y. Aug. 5, 2011) ("Absent consent by the parties pursuant to 28 U.S.C. 636(c) to proceed before a magistrate judge, where the motion presented is of a dispositive nature, such as enforcing (or vacating) a settlement, as here, a magistrate judge must issue a report and recommendation subject to *de novo* review."); *Guedry v. Marino*, 1996 WL 603921, at *1 (E. D. La. Oct. 21, 1996) (finding that although motion to compel settlement was referred to magistrate as a "non-dispositive pre-trial matter pursuant to 28 U.S.C. § 636(b)(1)(A)," the court "correctly treated the referral as having been made pursuant to 28 U.S.C. § 636(b)(1)(B)" relating to referrals of dispositive motions). [2]

The Court will not review Judge Wall's order *de novo*, however, because defendants failed to assert a proper objection to that order pursuant to Rule 72(b)(2). Under Rule 72(b)(2), "[w]ithin [10] [3] days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." "A

---

[2] That Magistrate Judge Wall did not label his opinion as a "report and recommendation" is of no consequence as the Court may treat the order as a recommendation. *See Moore's Federal Practice, § 72.08[1]* ("If a magistrate judge erroneously enters an order purporting to determine a dispositive matter, a district judge reviewing the order may ignore the form of the decision and treat it as a recommendation.")

[3] At the time of the parties' submissions, Rule 72(b)(2) required objections to be filed within 10 days. In any event, the 2009 Amendment altering the time period to 14 days does not change the analysis here.

9

failure to object timely to a magistrate's decision operates as a waiver of any further judicial review of that decision." *See Wesolek v. Canadair Ltd.*, 8338 F.2d 55, 58 (2d Cir. 1988). Here, defendants filed no objection,[4] thereby waiving their right to judicial review. The fact that Magistrate Judge Wall's opinion did not clearly state that failure to object would preclude further review does not excuse defendants, who were represented by counsel, from asserting a timely objection. *See E.E.O.C. v. N. Y. Foundling Hosp., Inc.*, 1991 WL 120460, at *1 (S.D.N.Y. June 26, 1991) (finding that while Second Circuit has recognized that "it would be preferable" for the magistrate to explicitly state time limits for objections, "the absence of such clear notice to the parties does not preclude application of the waiver rule"). Therefore, the Court, having reviewed the papers before Judge Wall and finding that Judge Wall did not commit clear error in denying defendants' motion to enforce the settlement, will not enforce the alleged settlement agreement.

**B.** *Statute of Limitations*

Defendants argue that "[u]nder the applicable statute of limitations, Plaintiffs' claims must be dismissed as to alleged deficient contributions dating prior to April 12, 1999," six years before plaintiffs filed the complaint. (Defs.' Mem. in Supp. at 15-16.). Neither party disputes that New York's six-year statute of limitations governs ERISA claims for delinquent contributions, s*ee Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, (2d Cir. 1983), and that the term begins to run "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Hanley v. Apertivo Restaurant Corp.*, 1998 WL 307376, at *7 (June 11, 1998 S.D.N.Y.) (internal

---

[4] The Court declines to construe defendants' January 10, 2007 letter request for a pre-motion conference addressing its anticipated summary judgment motion as an objection.

10

citation omitted).[5]  "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued."  *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995).

Defendants argue that the portion of plaintiffs' "claims for the period January 1, 1997 to April 12, 1999 are barred as a matter of law" because "by their audit conducted in 1998 and related correspondence in 1999, Plaintiffs knew or should have known about Defendants' method of reporting and any alleged failures to remit contributions for the periods from 1997 through 1999." (Defs.' Mem. in Supp. at 16-17.)  Furthermore, defendants argue that plaintiffs should have known about defendants' remittance practices because since the 1998 audit "counsel have engaged in many discussions concerning Defendants' practices for remitting contributions." (*Id*. at 17.)  Defendants further allege that plaintiffs were on notice about remittance practices because the prior lawsuit involved claims "for alleged deficient contributions under the same legal theories as advanced in the present matter."  (*Id*.)

Defendants cannot meet their burden to establish prima facie proof that any portion of plaintiffs' claims are barred.  Although the question of whether a plaintiff had reason to know of injury is generally a question of fact, *see Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 344 (2d Cir. 1991), defendants' allegations are so vague such that they do not raise a genuine issue of material fact to be tried.  Defendants' argument that plaintiffs were on notice of remittance practices at issue in this case because they had conducted a 1998 audit relating to the prior lawsuit is unavailing.  The 1998 audit covered the period from 1993 through 1996, no

---

[5] Although defendants failed to plead the statute of limitations defense in their answer, it is within the Court's discretion to construe defendants' motion for summary judgment as a motion pursuant to Rule 15(a) for leave to amend the answer. *See Anthony v. City of N. Y.*, 339 F.3d 129, 139, n. 5 (2d Cir. 2003).  Even if the Court does so, however, defendants' statute of limitations argument is without merit.

11

portion of which is at issue in the current lawsuit. Moreover, in arguing that plaintiffs were on notice, defendants rely solely on the declaration testimony of Mr. Watras. Watras refers to conversations between plaintiffs and defendants "throughout the litigation of the 2002 action" during which the parties "discussed the Companies' practices in making benefit fund remittances" without any specificity as to when exactly these conversations occurred, which practices were discussed, and whether they are at issue here. (Watras Decl. ¶ 21.) Furthermore, Watras's statement in his declaration that the disagreements between the parties over the past audits are "pretty much the same as the disagreements in this case," (Watras Reply Decl. ¶ 20), in no way satisfies the defendants' burden to establish a prima facie case that the statute of limitations began to run at any time during the prior lawsuit. Thus, no reasonable trier of fact could find that the statute of limitations limits plaintiffs' recovery.

**C.** *Disputed Employees*

Defendants claim that "[p]laintiffs wrongly attributed work performed by Inter-County and Inter-County Hampton without careful regard for the jurisdictional scope contained in the subject collective bargaining agreements," and specifically object to the inclusion of five disputed employees in the plaintiffs' audit. (Defs.' Mem. in Supp. at 19.) For the reasons discussed in Part III below, plaintiffs have raised a genuine dispute as to whether the audit properly reflected work performed by these employees. Therefore, for all of the foregoing reasons, defendants' motion for summary judgment is denied.

**III. Plaintiffs' Motion for Summary Judgment**

Plaintiffs claim that they are entitled to judgment as a matter of law based on the findings in the audit reports. (*See* Pls.' Mem. in Supp. at 8.) Both parties suggest that the Court should analyze plaintiffs' claims according to the following burden-shifting standard: "[o]nce the funds

12

produce evidence that raises genuine questions about the accuracy of the employer's records and the number of hours actually worked, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or evidence that the assumptions underlying the audit are incorrect." *Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc.*, 1993 WL 120081, at *1 (E.D.N.Y. Mar. 30, 1993) (internal quotations marks and citations omitted).

"Although the Second Circuit has not yet decided the applicable standard in [ERISA cases,] it has favorably discussed this burden shifting analysis. *See Trustees of the Local 807 Labor-Management Health and Pensions Funds v. River Trucking and Rigging, Inc.*, 2005 WL 2290579, at * 6 (E.D.N.Y. Sep. 20, 2005) (internal citations omitted). However, "[w]hile lower courts have applied the burden shifting analysis at trial, . . . they have generally declined to do so at the summary judgment stage, stating that 'the proper question in deciding the Fund's motion for summary judgment is whether defendant has submitted evidence that raises a factual dispute as to the amount of damages owing the Fund.' " *Id*. (citing *Demolition Workers v. Mackroyce Contracting Corp.*, 2000 WL 297244, at *7 (S.D.N.Y. Mar. 22, 2000); *Morin v. Spectrum Contracting Group, Inc.*, 2011 WL 1323005, at * 3 (E.D.N.Y. Jan. 13, 2011) ("[T]he majority of district courts within the Second Circuit have rejected this burden-shifting analysis at the summary judgment stage.")  Accordingly, the Court will not apply the burden shifting analysis here, and instead it will consider whether defendants have raised a genuine issue of fact regarding the amount of contributions owed to the Funds.

Defendants have raised a genuine factual dispute with regard to the contractual language of the CBAs. The plaintiffs contend that they are "entitled to summary judgment based on [the] plain language" of the scope provision present in each CBA stating that "[a]ll production employees in the employ of the Employer, excepting supervisors are included under the terms of

13

this Agreement." (Pls.' Mem. in Supp. at 15.) (*Id*.) On the other hand, defendants argue that "[p]laintiffs are wrongfully claiming work performed by Inter-County and Inter-County Hampton without careful regard for the jurisdictional scope contained in the subject [CBAs]," which they imply limits jurisdiction to only those workers listed under the heading of "Hours of Work and Rates of Pay" in the CBAs. (Defs.' Mem. in Supp. at 19.) Specifically, they claim that "[p]laintiffs wrongfully attributed work performed by Inter-County's glass manufacturing worker, supervisors,[6] manager, and sales person," as well as "Hampton's manager, mechanics (during the period when mechanics are outside of the agreement's trade jurisdiction) and sales person." (*Id*.) Defendants support this position by referencing the disputed employees contained in defendants' Exhibit L[7] and do not raise any dispute with regard to any other particular employees. Specifically, defendants contend that Caruso, whom defendants claim was in sales, and Rojas, whom defendants claim was a glass manufacturer, did not perform any covered work. (*See* Watras Dep. at 24, 27-28.) Defendants concede that Moytka, Ansman, and Steppan performed covered work for a portion of the audit period, but contend that Moytka was not covered for the portion of time he was a phone operator, Ansman was not covered for the time mechanic was not listed in the CBA, and Steppan was not covered for the time he worked in sales. (*See id*. at 14-15, 22-23, 28-30.)

---

[6] In Exhibit L, the only employee defendants list as a supervisor is Edward Steppan, however, Mr. Watras, in his deposition, claims that Steppan did "primarily dispatch [and] sales" work, which was not covered by the CBAs. Although the CBAs clearly exclude supervisors, it is unclear whether defendants intend to argue that Steppan was not covered because he was a supervisor or if they intend to argue that he was not performing covered work because he performed sales and dispatch work. Nevertheless, whether Steppan performed covered work is in dispute.

[7] Exhibit L excludes Richard Ansman, but is duplicative of the Audit Review and Summary of Findings contained in Exhibit A of the Leeds Decl. in all other respects. Despite Ansman's exclusion from this document, defendants still dispute Ansman's status as a covered employee. *See* Watras Dep. at 22-23.

14

"When a court interprets a CBA, the traditional rules of contract interpretation apply, provided they are consistent with fair labor policies." *Sciascia v. Rochdale Village, Inc.*, 851 F. Supp. 2d 460, 474 (E.D.N.Y. 2012). "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000); *see also Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."). Ambiguity "is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). "No ambiguity exists when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978)); *see also Red Rock Commodities, Ltd. v. Standard Charted Bank*, 140 F.3d 420, 424 (2d. Cir 1998) ("A contract is not ambiguous where there is no reasonable basis for a difference of opinion."). "In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)). "[A]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *Shaw Grp.*, 322 F.3d at 124

(quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)); *see also Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) ("[T]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency.")

Even where a contract can be reasonably interpreted in more than on way, "ambiguity itself is not enough to preclude summary judgment." *Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 116 (2d Cir. 1994). "If the court finds that the terms, or the inferences readily drawn from the terms, are ambiguous, then the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Alexander & Alexander Servs., Inc. v. Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998). "However, when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (internal quotation marks and citation omitted). Therefore, "[t]o the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." *Topps Co.*, 526 F.3d at 68; *accord Compagnie Financiere*, 232 F.3d at 158.

Here, the Court finds that the contractual language of the CBAs is ambiguous as a matter of law. Although the scope clause of the CBAs states that the agreement covers "all production employees," the agreement does not define the term "production employees." As a result, a reasonably intelligent person reading the agreement as a whole could construe the term to include only those positions listed under the "Hours of Work and Rates of Pay" portion of the

16

agreement. On the other hand, since the "Hours of Work and Rates of Pay" portion of the agreement is a separate section, distinct from the scope provision, a reasonably intelligent person could also view the agreement as covering a broader scope of employees than those merely listed under "Hours of Work and Rates of Pay." Moreover, the evidence presented by the parties outside of the contract does not resolve the ambiguity. Although plaintiffs raise the fact that "the Companies submitted monthly remittance reports listing [the disputed employees] as covered and contributed almost $300,000 on their behalf during the Audit Period," (Pls.' Mem. in Supp. at 11; Driscoll Decl. ¶¶ 24-33,) defendants have offered a legitimate explanation for their contributions to the disputed employees, namely that the Companies' representative, Lou Yonkey committed errors in reporting the contributions owed on behalf of covered employees. As a result, genuine questions of fact exist regarding the contributions owed to the Funds on behalf of the five disputed employees. Accordingly, the Court denies summary judgment with respect to the disputed employees. Defendants, however, have not raised any genuine issue of fact with respect to the other employees included in the audit. As a result, plaintiffs' summary judgment is granted as to these non-disputed employees.

## *CONCLUSION*

For the reasons set forth above, defendants' motion for summary judgment is denied. Plaintiffs' motion for summary judgment against Hampton Bays and Inter-County is granted in part and denied in part. Defendants are reminded once again that they must retain counsel in order to proceed in this action, and they must do so within thirty days of this Order.

The Court has received plaintiffs' letter of March 30, 2012, which was submitted in order to notify the Court that the bankruptcy proceeding had concluded and that plaintiffs were ready to proceed with this action. To the extent plaintiffs intend to move the Court to consider

arguments raised in that letter pertaining to the effect of the Bankruptcy Court Award on the claims against Inter-County Deer Park in this action, plaintiffs must do so within forty-five days of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
October 15, 2013

/s/

Denis R. Hurley
United States District Judge